# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLANIYAN  ADEFUMI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DR. SHARON LIM | : | No.  15-1101 |

## MEMORANDUM AND ORDER

**Ditter, J.**                                                    **July 23, 2018**

Olaniyan Adefumi brings this action under 42 U.S.C. § 1983 claiming that he was

touched inappropriately by Dr. Sharon Lim while seeking treatment in a health clinic run

by the City of Philadelphia.  Dr. Lim has filed a motion for summary judgment with four

supporting contentions.  For the reasons that follow, Dr. Lim's motion will be granted.

## I.     FACTUAL AND PROCEDURAL HISTORY[1]

On November 19, 2014, Mr. Adefumi visited Health Center No. 5, located at 20th

and Berks Streets in Philadelphia, seeking treatment for right shoulder stiffness and a rash

on his upper left thigh.[2]  After being brought into an examination room, a nurse took his

vital signs, but did not offer him a robe to wear.  Mr. Adefumi then met with Dr. Lim and

Zach Sementz, a patient advocate who was shadowing Dr. Lim at the time.[3]

Mr. Adefumi told Dr. Lim about his complaints regarding his right shoulder and

---

[1] For purposes of this motion, the facts are viewed in the light most favorable to the plaintiff as the non-moving party.

[2] The Health Centers are operated by the Philadelphia Department of Public Health to provide medical care to Philadelphia residents.

[3] Mr. Sementz was in the examination room with Dr. Lim throughout her encounter with Mr. Adefumi.

left thigh.  Dr. Lim asked Mr. Adefumi to remove his shirt and checked the range of motion of his right shoulder.  Dr. Lim then instructed Mr. Adefumi to take off his trousers and underpants and lie down on a stretcher.  He says she then touched him in a way he felt was  inappropriate for between twenty-eight and thirty-eight minutes.  Although he did not object at the time, Mr. Adefumi now complains that Dr. Lim injured him and he "became sick, suicidal, and hospitalized."  Pl.'s Resp. to Mot. for Summ. J. at 13.  He also alleges that he "lost [the] chance to attend medical school, the University of Medicine and Health Sciences, as a result of this negative encounter."  Pl.'s Resp. to Mot. for Summ. J. at 23.

## II.    STANDARD OF REVIEW

The standard for summary judgment is well established.  I must consider the evidence in a light most favorable to the non-moving party.  If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  In deciding the motion for summary judgment, it is not the function of the court to decide disputed questions of fact, but only to determine whether genuine issues of fact exist.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986).

However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion.  *Harter v. GAF*

*Corp.*, 967 F.2d 846, 852 (3d Cir. 1992). Here, Mr. Adefumi must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1992); *see also Harter*, 967 F.2d at 852.

It is well settled that the allegations of a *pro se* plaintiff, "however inartfully pleaded," are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Notwithstanding, "any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." *Groch v. Com., Unemployment Compensation Bd. of Review*, 472 A.2d 286, 288 (Pa. Cmwlth. 1984). "A *pro se* litigant assumes the risks and hazards that accompany self-representation." *Carter v. Grambau*, 2016 WL 5257438, at *4 n.1 (W.D. Mich. Aug. 29, 2016) (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)).

## III.   DISCUSSION

### A.   Constitutional Violation

Dr. Lim contends that Plaintiff has not pled a cause of action giving rise to a cognizable right to relief. She points out that pursuant to 42 U.S.C. § 1983, Mr. Adefumi

must have alleged that "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States."[4]  *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).  She maintains he has not done so.  However, Mr. Adefumi has asserted his claim against Dr. Lim, a doctor employed by the Philadelphia Department of Public Health, and therefore, a state actor.  Mr. Adefumi also claimed that Dr. Lim touched him inappropriately, asserting a violation of his right to bodily integrity protected by the Fourteenth Amendment.  *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) ("[i]ndividuals have a constitutional liberty interest in bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment") (citations omitted); *see generally* U.S. Const. Amend. XIV ("[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law").  As I previously determined in denying Dr. Lim's motion to dismiss, Mr. Adefumi has set forth a cognizable constitutional claim worthy of review.

---

[4]  Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

## B.     Contentions Supporting Alleged Constitutional Violation

To respond to Defendant's motion for summary judgment, Mr. Adefumi as the non-moving party and as the plaintiff, must refer to evidence which, if believed, would establish liability on Dr. Lim's part and his entitlement to damages.

For purposes of the present motion, I will accept as true all of Mr. Adefumi's assertions.

Mr. Adefumi alleges that he was not offered a robe.  He did not ask for one.[5]

He learned that he would be treated by a woman doctor.  He neither objected nor asked for a male doctor.

He was told to remove his shirt.  He did so without objection nor did he state any objection to Dr. Lim's treatment of his shoulder.

Dr. Lim told him to remove his pants.  When Dr. Lim realized that he had not removed his underwear, he alleges she "screamed" at him to remove "the underpants too."  *See* Def.'s Mot. for Summ. J., Ex. B at 25:1-10.  Mr. Adefumi testified that he "had no choice to do as she said or lose another day of work . . . She screamed.  I was about ready to destroy the room . . . I'm quite sure I was going to really put my fist through walls."  *See* Def.'s Mot. for Summ. J., Ex. B at 25:11-19.

He further elaborated, alleging that Dr. Lim knew her acts were inappropriate and "extreme" and could cause him to "become violent and go to jail after possibly being

---

[5] Obviously a robe would not have made any difference in what followed.  He still would have had to remove his shirt, trousers, and underpants.

placed in a 'Freddie Gray' police paddy-wagon ride or committing suicide," Pl.'s Resp. to Mot. for Summ. J. at 9.[6]  Nonetheless, he did not notify her of any negative feelings at the time of the examination, either implicitly or explicitly.  Indeed, Mr. Adefumi testified in his deposition: "I didn't tell her anything, because once I found out her style of communication, I knew that if she took the option of being a naughty person again that I would have lost control.  So, I didn't give her another verbal response for the whole day." Def.'s Mot. for Summ. J., Ex. B at 26:7-11.

In short, he was angered  by the way Dr. Lim spoke to him.  However, he said nothing to her, fearing that if he did, he would become violent and be arrested.

After Mr. Adefumi removed his underpants, Dr. Lim conducted a physical examination of Mr. Adefumi's upper left thigh rash.  Mr. Adefumi asserts that during the physical examination, Dr. Lim touched and massaged him in a way he thought was inappropriate, including handling his penis and testicles.  In support thereof, he alleges that she repeatedly "slapped" his penis out of her way and massaged the rash for more

---

[6] The source of his knowledge of her knowledge is not revealed.

than twenty-eight to thirty-eight minutes.  *See* Am. Compl. at ¶ 5; Def.'s Mot. for Summ. J., Ex. B.

In addition, while Mr. Adefumi felt Dr. Lim "touched [his] shoulder and back unnecessarily" during her range of motion examination, he said nothing at the time and wondered later if he was not being over sensitive.  *See* Pl.'s Resp. to Mot. for Summ. J. at 7, Def.'s Mot. for Summ. J., Ex. B at 19:21-20:6.

At no time during the entire twenty-eight to thirty-eight minutes did he object to what Dr. Lim was doing.  After Dr. Lim's treatment was finished, she prescribed an ointment for his rash which was effective.

When he got out of the clinic, he was confused.  He didn't know " . . . if she did something wrong, [or] is it me just being a big baby."  *See* Def.'s Mot. for Summ. J., Ex. B at 32:2-4.

In summary then: In support of his claim that Dr. Lim violated his Constitutional rights,  Mr. Adefumi would testify that he was not offered a robe, was yelled at, and that Dr. Lim, a woman, touched him in ways he felt were inappropriate for twenty-eight to thirty-eight minutes.[7]  At no time did he object to any of these events and when they were concluded, he was not sure Dr. Lim had done anything wrong.  Although he may now feel

---

[7] Mr. Adefumi also alleges that his right to "informed consent" found in the "Patient Bill of Rights" was violated because Dr. Lim failed to tell him what would happen during the examination and did not ask him, but rather told him, to expose his penis. Pl.'s Resp. to Mot. for Summ. J. at 13, 15.  In light of the fact that Mr. Adefumi requested a medical examination of his upper thigh, I conclude that Mr. Adefumi provided his consent to the exam.

that what she did was wrong, his feelings do not create Constitutional rights.  No case has held they do.[8]

Giving Mr. Adefumi the best of everything including the inferences that can be taken from his contemplated testimony, I conclude that no reasonable finder of fact could find that Dr. Lim violated Mr. Adefumi's Constitutional rights.

### C.    Fourteenth Amendment Violation

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  "'The core of the concept of due process is protection against arbitrary action . . .  only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) (internal quotes and parentheticals omitted).  In analyzing claims of executive abuse of power, the United States Supreme Court has implemented a "shocks the conscience" standard.  *See Lewis*, 523 U.S. at 846.

Conscience shocking behavior has been referred to as that which is manifestly and grossly unjust and unfair, it is the most egregious type of behavior.  Conduct that shocks

---

[8]  While Constitutional rights can be found in penumbras formed by emanations, *see Roe v Wade*, 410 U.S. 113 (1973), no case has held that a Constitutional right comes from feelings.

the conscience is found when the state actor knows what he is doing may cause harm but does it anyway. In other words, he acts with deliberate indifference to the consequences.

I conclude that Dr. Lim's actions do not "shock the conscience," nor were they arbitrary as they were part of her medical examination.[9] Mr. Adefumi sought medical care for a rash on his upper thigh. In the course of examining the area, Dr. Lim palpated the rash on Mr. Adefumi's thigh to determine whether the lesions were flat and to see if there was any discharge. Despite what he considered the uncomfortable nature of a female doctor performing a physical exam in the area of his genitals, Dr. Lim's actions were a reasonable response to Mr. Adefumi's request for medical care.

No reasonable finder of fact would conclude that Dr. Lim's conduct shocks the conscience.

### D. Qualified Immunity

In any event, qualified immunity protects Dr. Lim. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Supreme Court has set forth a two-step inquiry for determining qualified immunity: (1) first whether the alleged actions of the

---

[9] Although Mr. Adefumi notes that on a follow up visit to Temple University Hospital to treat the rash and neck pain, the physician "examined the rash after I was robed and he did not need to examine my penis, scrotum, and/or my anus," Pl.'s Resp. to Mot. for Simm. J. at 9, one doctor's method of examination does not dictate another's standard of care.

official violated a constitutional right; and if so, (2) whether a reasonable official would have known that his actions violated a "clearly established" right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). I have discretion to proceed directly to the second inquiry and determine whether the right at issue was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

Dr. Lim did not violate any of Mr. Adefumi's "clearly established" rights. Although Mr. Adefumi appears to allege that he had the right not to have his penis touched during an examination of his upper thigh and groin area, he offers no proof that such a right exists or that Dr. Lim would have known her examination violated that right. In fact, Mr. Adefumi requested medical intervention for his complaints and failed to object during the physical examination. As a result, Dr. Lim is entitled to qualified immunity.

## IV. CONCLUSION

For the reasons set forth above, I find that Mr. Adefumi has failed to present evidence from which a fact-finder could conclude that Dr. Lim violated his constitutional rights. Second, no fact finder would conclude that Dr. Lim's actions were conscience shocking, and finally Dr. Lim is entitled to qualified immunity.

Therefore, I will grant the motion for summary judgment filed by Dr. Lim and enter judgment in her favor on all claims raised in the complaint.

An appropriate order follows.