# In Response

This is my response regarding jurisdiction of information that I had not received about my case, Case Number:

18-3346 and District Court Case Number : 2-15-cv-01101.

I have not learned that the case was dismissed until a very late date. Otherwise I would have appealed the decision. At earlier times I found problems of getting information from the court or from an attorney because the computer system, or something, did not correctly deliver the information to me or to the attorney. Being concerned about the case I visited the court and then learned that the case, which I thought was still active in the court, had been dismissed. I got a copy of Judge Ditter's opinion of my case and decided to deliver a letter of appeal. Later I learned that the appeal must not be in a letter to the judge but that there was a process which I must use. So, I delivered papers to go through that process.

This motion is for the court to advance my findings to a conclusion where the City of Philadelphia will be held responsible for negligence and sexual attack of a former health center patient, Olaniyan Adefumi. Details of this problem are below and includes that the medical team had much of its membership in a state of forgetfulness, of illegal activity, of being uninformed of, or of not being willing to use nursing guidelines and cultural norms of many residents of the United States of America. They had inconsistencies and a lack of giving the patient

"informed consent."

All of this was not fully, by every team member, a coincidence but an intended and understood physical and psychological attack on the victim was given by the doctor who had studied, according to her testimony, in medical school problems that many male patients have with female doctors seeing and touching their male private parts. With that knowledge she decided not to give the patient the option of being treated by a male physician. Now, he, the victim, has written you and supplied you with depositions so the victimizers will be appropriately punished. This case has caused the victim to be very sick, extremely sick, and hospitalized.

1

An issue addressed by the doctor found my agreement. It is the issue of "palpation." In the essay "Exposed and the Underpants too" I described palpation by another word, "massaging," and reported that she could have taught me how to do that. Here, she could have illustrated palpating the rash so that blood with oxygen would circulate through the body cells and remove the rash. She could have illustrated the technique on my arm. Yet, with the strong propaganda of "the ghetto minded" embedded in her medical school brain she believed that I needed the palpation to be done by a medical doctor and not from a man without an obvious medical degree and who lives in a high crime and high high-school drop-out rate neighborhood called "the hood."

"How dumb does she think we are?"

*Rape of Males/Suicide,     According to Wikipedia*

It also seems that one reason why I changed my mind away from committing suicide is that I was not penetrated by a penis. Yet, many male victims of sexual rape have decided to die. Also, many who were abused fail to speak out about it because to do so is something that seems to be too non-masculine, feminine.

Using the depositions increased and reinforced negative things that I found with the medical team. Pushing this further was their legal team's attorneys who worked to hide truths of what occurred from being expressed by the workers even by stating that I had violated the law. One team member, Mr. Duncan Lloyd, broke the law by filming an act of destruction on Germantown Avenue. Another, Attorney Rebecca Prosper, wrote and told me that she found in her investigation that I delivered the court notice to Dr. Lim. Instead, Mr. Brown delivered it for me. Dr. Lim reported that she did not remember Mr. Brown or me delivering the court notice. So, where is Attorney Prosper's proof or is it a lie? Attorney Cooper would not allow members of the team to answer some questions. He would not allow Dr. Lim and Mr. Semenetz, her student, to each draw, while not looking at each other's work, a picture of what was seen in the room where Mr. Adefumi was treated by Dr. Lim. Here, their pictures would show a difference if they had different stories where one or both pictures were not something that showed the truth. Having them both, at the same time, in the room where the deposition took place allowed them to both adjust their answers rather than expose their separate and different answers such as what two separate pictures by each of the two, the doctor and the student, would have exposed.

A summary of the issue is that many things were done that were wrong. In Dr. Lim's analysis of the two problems she failed to analyze what caused the injuries. Here, the shoulder and head pains came from me sleeping on a bad pillow and the leg rash came from me bicycling on a bicycle that had a small "rub" between the back wheel and the frame of the bicycle. Once I changed those two problems the problems left. There was not enough "Patient Rights" such as "Informed Consent" that was used. These rights are printed in "Google" – respect model medicine. The first part of "Informed Consent" is "What the doctor is proposing to do" and another part is "All reasonable alternatives including risk and possible benefits." Here, in the interview the doctor not only is informed by the patient of the patient's illness the patient is informed of what will the doctor and the patient do in the office. Dr. Lim did not tell me that I would have to have a "groin examination" and/or would have to expose my buttocks and penis in a room where there was a watching female doctor. She didn't tell me that I would be exposed, on the penis, while she palpated my rash. Again, I did not get informed consent. In the immediate neighborhood to Healthcare Center Number Five is the Church of the Advocate. I wanted to take issues of this case there because I know that the conservativeness of most religious people will not be so "liberal" on the issue of giving people sexual privacy in a medical setting. Also, Dr. Lim told us that she is aware of the psychology of many patients who do not want a member of their opposite sex to observe their sex organs. So, why did she not send me to a male doctor or be the female doctor who did not touch or view my penis other than she wanted to harm me? This lead to my hospitalization because of the psychological harm I met from Dr. Sharon Lim.

Many things were forgotten by members of the medical team. Here, knowing that a deposition was scheduled the team members should have reviewed notes on my case. It is evident that they did not do that and/or what was reviewed was irrelevant. It is also apparent that the team did not give me "informed consent," was negligent, and one or more of the members knew of the problems that could easily emerge from their treatment of patients. Here, I want the City of Philadelphia to be charged with medical negligence on a patient and a deduction of fifty thousand dollars to cover the pain the patient suffered, the resulting suicidal thoughts of the patient, and the lost chance to attend medical school, the University of Medicine and Health Sciences, as a result of this negative encounter.

## This is the result of the depositions

First, the following information was left in the court on May 21, 2018 with an explanation of the participants' position on the case. I summarized the findings of what Dr. Sharon Lim, Mr. Semenetz, and Mr. Wilkerson did. The facts show that I was naked without any pants on for a long time as Dr. Lim tried to **palpate** my rash. No "informed consent" opportunities or/and the option to be treated by a male physician were given to me. This is medical negligence that left me hospitalized.

Using the depositions increased and reinforced negative things that I found with the medical team. Pushing this further was their legal team's attorneys who worked to hide truths of what occurred from being expressed by the workers even by stating that I had violated the law. One team member, Mr. Duncan Lloyd, broke the law by filming an act of destruction on Germantown Avenue. Another, Attorney Rebecca Prosper, wrote and told me that she found in her investigation that I delivered the court notice to Dr. Lim. Instead, Mr. Brown delivered it for me. Dr. Lim reported that she did not remember Mr. Brown or me delivering the court notice. So, where is Attorney Prosper's proof or is it a lie? Attorney Cooper would not allow members of the team to answer some questions. He would not allow Dr. Lim and Mr. Semenetz, her student, to each draw, while not looking at each other's work, a picture of what was seen in the room where Mr. Adefumi was treated by Dr. Lim. Here, their pictures would show a difference if they had different stories where one or both pictures were not something that showed the truth. Having them both in the room where the deposition took place allowed them to both adjust their answers rather than expose their separate and different answers such as what two separate pictures by each of the two, the doctor and the student, would of exposed.

## The Interview

On November 19, 2014 I went to the City of Philadelphia's Health Center Number Five to get help with removing a stiff top right side neck area pain and a rash that was on my left leg's upper-inside thigh. I tried to go to this health center for help much earlier but I was told to return on my previously scheduled by health center staff date of November 19, 2014. Being too sick to wait in the "walk-in" line of people I went home and returned on November 19, 2014 not to see Dr. Lim, as she has reported, but to get help on my neck and right leg's upper-inside thigh. I was seen by Dr. Lim and her shadowing student, Mr. Semenetz.

They saw me in a big room where I was alone for some ten to fifteen minutes after a nurse recorded my vital signs. She, the nurse, did not give me a robe to wear. In Attorney Prosper's deposition I was asked did the nurse offer me a gown or robe. I responded by telling her that I was not given that opportunity and it is one of the things that I had addressed in my 2014 letter to Health Center Number Five. I left that room and went with the medical team to a much smaller room that appeared to be a doctor's office. There, Dr. Lim's interview of me was to asked me what caused me to arrive and she also asked "Did I have these problems before" after I had told her about my two injuries.

## Head and Leg Injuries

After that, first, she told me to remove my shirt and she found my range of motion of my right shoulder. This took more than ten minutes to do as she stood behind me and to the right side of me. Often she touched my shoulder and back unnecessarily.

Second, because she believed that my groin could be affected by the rash she told me to take off my pants and get on the stretcher. Intentionally she tried to hide it by stating that she "asked" me to lower my pants. One cannot ask another one to pull down his or her pants but one can tell one to pull down her or his pants. Also, Mr. Semenetz, her student, informed the City's Department of Public Health on January 6, 2015 that the pants had to removed for the doctor to do her work on the patient. Not knowing the reason/s why she wanted that, she never gave me a reason or reasons of why she wanted anything, I did what she told me to do. Then she observed that I still wore my underpants and screamed the ghetto sentence fragment "the underpants too?" One doesn't have to hear a Geico insurance commercial to know that pants is a noun that has the same pronunciation for both the singular and the plural format. Her articulation did not respect that cultural norms that are printed in Rules for Draping/Positioning.

In the Rules for Draping/Positioning a patient it is shown that one should be aware of male – male and female – female limits and the back should be exposed only to the gluteal cleft. When both pants are lowered areas below the gluteal cleft are exposed and this breaks her argument that she followed the nursing rules of exposing only one small body section at a time. Mr. Semenetz was asked what is the difference between lowing one's pants and removing one's pants. He told us that there is no difference other than "semantics."

8

## Rules for Draping / Positioning
Draping
*Provide access / exposure to areas to be tx while protecting other areas
*Provide modesty for pt
Maintain appropriate body $T^0$
*To protect the pt's clothing from being soiled / damaged
Draping Techniques

NOTE → Each pt has his/her own concept of modesty

*Inform pt of type of clothing worn for tx sessions
*Inform the patient that clothing may need to be removed & WHY it is necessary to do so
Draping Techniques
*Draping ∅ restrict jt motion (of the joint you are treating / exposing)
*Drape needs to remain secure
Draping Techniques

Tell pt → body will be protected by linen, except for the area to be treated
*Use clean linens
*Door should be closed while pt is dressing
*Be aware of male-male & female-female
*When you leave the room/cubicle, drape everything
Rules for Draping
*Expose only area being worked on
*Genital area of both male and female covered at all times

*Back **exposed** only to gluteal cleft
*Female breasts covered at all times
*Clean linens for every client

*Linens → laundered in hot $H_2O$ w/detergent a bleach / dried in clothes dryer.
*A layer of protection bw client and bolster
*A layer of protection bw client and practitioner
*Practice makes perfect


te that bw stands for the word **between, pt stands for the word patient, and $T^0$ stands for temperature.**

A summary of the issue is that many things were done that were wrong. In Dr. Lim's analysis of the two problems she failed to analyze what caused the injuries. Here, the shoulder and head pains came from me sleeping on a bad pillow and the leg rash came from me bicycling on a bicycle that had a small "rub" between the back wheel and the frame of the bicycle. Once I changed those two problems the problems left. There was not enough "Patient Rights" such as "Informed Consent" that was used. These rights are printed in "Google" – respect model medicine. The first part of "Informed Consent" is "What the doctor is proposing to do" and another part is "All reasonable alternatives including risk and possible benefits." <u>Here, in the interview, the doctor not only is informed by the patient of the patient's illness the patient is informed of what will the doctor and the patient do in the office. Dr. Lim did not tell me that I would have to have a "groin examination"</u> and/or would have to expose my buttocks and penis in a room where there was a watching female. She didn't tell me that I would be exposed, on the penis, while she palpated my rash. Again, I did not get informed consent. In the immediate neighborhood to Healthcare Center Number Five is the Church of the Advocate. I wanted to take issues of this case there because I know that the conservativeness of most religious people will not be so "liberal" on the issue of giving people sexual privacy in a medical setting. Also, Dr. Lim told us that she is aware of the psychology of many patients who do not want a member of their opposite sex to observe their sex organs. So, why did she not send me to a male doctor or be the female doctor who did not touch or view my penis other than that she wanted to harm me? This lead to my hospitalization because of the psychological harm I met from Dr. Sharon Lim.

Many things were forgotten by members of the medical team. Here, knowing that a deposition was scheduled the team members should have reviewed notes on my case. It is evident that they did not do that and/or what was reviewed was irrelevant. It is also apparent that the team did not give me "informed consent," was negligent, and one or more of the members knew of the problems that could easily emerge from their treatment of patients. Here, I want the City of Philadelphia to be charged with medical negligence on a patient and a deduction of fifty thousand dollars to cover the pain the patient suffered, the resulting suicidal thoughts of the patient, and the lost chance to attend medical school, the University of Medicine and Health Sciences, as a result of this negative encounter.

Olaniyan Adefumi

Olaniyan Adefumi

11-13-2018

10